# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

ROSALIND BACON,                )
                               )
      Plaintiff,        )
                               )
v.                             )          CV419-300
                               )
ROSALYN FRAZIER, *et al.*,     )
                               )
      Defendants.       )

## ORDER AND REPORT AND RECOMMENDATION

Plaintiff Rosalind Bacon, proceeding *pro se* and *in forma pauperis*, brings this Complaint alleging discrimination and retaliation under the Americans with Disabilities Act (ADA) of 1967, 42 U.S.C. § 12112, *et seq.* and the Age Discrimination in Employment Act (ADEA) of 1967, 29 U.S.C. § 621, *et. seq.* Doc. 1. The Court granted plaintiff's Motion for Leave to proceed *in forma pauperis* (IFP), doc. 4, and now screens the Complaint pursuant to 28 U.S.C. §1915(e).[1]

---

[1] Pursuant to 28 U.S.C. §1915(e)(2)(B), "the court shall dismiss the case at any time if the court determines that the action or appeal (i) is frivolous or malicious; (2) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. §1915(e)(2)(B).

# BACKGROUND

Plaintiff is 55 years old and suffers from chronic systemic lupus erythematosus (lupus) and a medical condition that causes seizures and brain aneurysms.[2]  Doc. 1 at 4.  Plaintiff was employed by Robert Half International, Inc. (RHI), a staffing service, between January 2015 and August 2018.  Doc. 1-1 at 22.  She notified RHI of her medical condition in 2016.  *Id.* at 22.  In February 2018, defendant Rosalyn Frazier notified plaintiff that defendant Citi Trends Corporate Office (Citi Trends) was interested in hiring her for a full-time data entry position, to begin in early March.  *Id.* at 2 and 22.  At the time, she understood the position to

---

[2] The specific cause of plaintiff's seizures and aneurysms is not clear from the pleadings.  In her Complaint, she suggests that the seizures and aneurysms are related to epilepsy.  Doc. 1 at 4.  Elsewhere in her pleadings, however, primarily in physician prepared documents, she is noted as suffering from a "seizure disorder."  Doc. 1-1 at 18, 22, 30, and 33.  The Court further understands that seizures can be a symptom of systemic lupus erythematosus.  For the sake of clarity, the Court will presume plaintiff to suffer from lupus and a separate, unspecified condition that causes seizures and aneurysms.

Furthermore, the pleadings include an application for the Department of Human Resources and Urban Development McKinney-Vento program, in which a psychologist attests to plaintiff also suffering post-traumatic stress disorder and an unspecified depressive disorder.  Doc. 1-2 at 44–45.  As plaintiff does not reference these conditions in her narrative of the alleged workplace discrimination and it is not clear if they were communicated to her employer, they will not be considered in the Court's analysis.

be a permanent "data entry position full time as a Sales Assistant."[3]  *Id.* at 2.  The position was structured so that plaintiff would work for 90-days in a temporary capacity as an employee of RHI before moving into a permanent position as an employee of Citi Trends.  *Id.* at 22.

In early April 2018, plaintiff suffered multiple seizures and lupus flares.  *Id.*  Around the same time, she also experienced the loss of an aunt.[4]  *Id.*  Plaintiff notified RHI and Citi Trends of her personal and medical situation in writing and requested time off for doctors' appointments and grief counseling.[5]  Doc. 1 at 5 & Doc. 1-1 at 22.  She also asked for accommodation to leave work at 3:00 p.m. in order to make

---

[3] The pleadings are internally inconsistent as to plaintiff's understanding of whether the position was intended to be permanent.  In her Complaint and statement to the EEOC, she indicates that she understood the position to be, if not immediately permanent, intended to transition to permanent after 90 days.  Docs. 1 at 4 & 1-1 at 22.  However, her email of July 12, 2018, to Laura Taylor of RHI suggests that she was not certain of her job status.  Doc. 1-2 at 3 ("[T]here is a position on Citi Trends website that I am interested in but was not certain of what type of position I am currently fulfilling now.  I was not certain if it was a temp to hire position [through] Robert Half.").

[4] Another of plaintiff's aunts died in July 2018. Doc. 1-2 at 45.  Plaintiff has provided a copy of the email in which she informs defendants Lauren Nolte and Lisa Avila and apologized for taking time away from her position.  *Id.*  The Court notes that in an email from January 2018, plaintiff acknowledged that Nolte was no longer with Office Team.  It is unclear if Nolte remained employed by RHI in another capacity.  It is also unclear if plaintiff communicated her need for time off or accommodation for grief counseling to her supervisors at Citi Trends.

[5] It is not clear from plaintiff's filings if Citi Trends was aware of her medical conditions or request for accommodations prior to April 2018.

3:30 pm doctor's appointments, the latest available. *Id*. Citi Trends did not grant plaintiff's request to leave work early, though similar requests were granted for other employees. *Id*. at 22 and 24. It is unclear if plaintiff's request for time off was approved.

Plaintiff alleges that after learning that she suffered from lupus, her supervisor, defendant Rosalyn Frazier, engaged in discriminatory behavior. *Id*. at 23. Among the acts alleged was Frazier leaving plaintiff's medical history in a public area. *Id*. at 23. Plaintiff also alleges that she was required to work ten-hour days without a lunch break— interfering with her ability to take medication.[6] *Id*. at 23. She was also made to assist in multiple departments. *Id*. While working at Citi Trends, plaintiff was not provided with a badge needed for entry into the building and, on at least one occasion, was late returning from lunch due to being unable to enter the building. *Id*. at 23–24. Plaintiff did complain

---

[6] The frequency at which plaintiff was expected to work ten-hour days is not clear from the pleadings. The only timesheet included in plaintiff's filing reflects that on four of the five workdays reflected, plaintiff worked from 8:00 am to 5:00 pm, with lunch breaks ranging in length from 57 minutes to two hours and seventeen minutes. Doc. 1-2 at 46. On only one day did plaintiff work a ten-hour day without a lunch break. *Id*. For the full week, plaintiff accumulated slightly more than 40 working hours. Additionally, in an email to defendant Avila dated three weeks after the timesheet, plaintiff claims that her working hours were 10:00 am to 6:00 pm. Doc. 1-2 at 30.

to Rachel Danes, an employee of RHI; after which she was offered the position of Exit Interviewer. *Id.* at 3 and 23.

Plaintiff additionally alleges that her brother was in a relationship with defendant Vanessa Davis, a human resources employee of RHI. *Id.* at 23. She claims that her brother, in retaliation for a comment that plaintiff made on social media about her daughter, sought to have her fired, using his influence over Davis. *Id.*

During her time as an Exit Interviewer, plaintiff also worked with the human resources department for insurance open enrollment, the attorney's office in leasing and compliance, in a data entry position, and in lay-a-way call backs. *Id.* at 24. At the conclusion of her human resources assignment, though Citi Trends was pleased with her work, *id.* at 45, plaintiff was not offered a permanent position or retained, *id.* at 24–25.[7] Plaintiff subsequently filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) against Citi

---

[7] Plaintiff also includes in her pleadings documents related to prior positions, presumably obtained through RHI, with companies other than Citi Trends. This includes an earlier EEOC charge of discrimination filed against Ship Supply International in 2017 and a narrative of her employment with that company, including allegations of potential illegality. Doc 1-1 at 1–2 and 75–78. The Court cannot discern the intended relevance of these additional documents.

Trends.  Doc. 1-1 at 1.  Following its investigation, the EEOC issued a Right to Sue letter on November 5, 2019.  Doc. 1 at 5.

## DISCUSSION

Plaintiff brings this suit against Citi Trends and four of its employees, Rosalyn Frazier, Lisa Avilla, Mark Brown, and Michael Bausman.  She claims that she was the victim of discrimination and retaliation based on her disability and age.[8]  The ADA prohibits discrimination by employers "on the basis of disability." 42 U.S.C. § 12112(a) (2012)  Similarly, the ADEA prohibits an employer from taking adverse action against an employee "because of such individual's age." 29 U.S.C. § 623(a).  For the following reasons, plaintiff's ADA claim against Citi Trends Corporate Office survives screenings, but her ADEA claim requires amendment.  The claims against individual defendants should be dismissed.

---

[8] Plaintiff's EEOC Charge of Discrimination also cites race, color, national origin, and genetic information.  These theories of discrimination are not repeated in the Complaint or developed in the pleadings.  As such, they will not be considered by the Court.

## I. Proper Parties

### A. ADA and ADEA Claims Against Individual Defendants

Plaintiff's claims against the individual defendants should be dismissed. Neither the ADA nor the ADEA allows for individual liability. *See Albra v. Advan, Inc.*, 490 F.3d 826, 830 (11th Cir. 2009) (". . . individual liability is precluded for violations of the ADA's employment discrimination provision. . .."); *Smith v. Lomax*, 45 F.3d 402, 403 n.4 (11th Cir. 1995) (individuals that are not an employer "cannot be held liable under the ADEA or Title VII."); *see also Dearth v. Collins*, 441 F.3d 931, 934 n.2 (11th Cir. 2006) ("Title VII, the ADA, and the Age Discrimination in Employment Act all have similar definitions of 'employer' and courts routinely apply arguments regarding individual liability to all three statutes interchangeably." (internal quotations and citations omitted)). Both limit liability to the employer. Therefore, the claims against individual defendants Rosalyn Frazier, Lisa Avilla, Mark Brown, and Michael Bausman should be **DISMISSED**.[9]

---

[9] The individual defendants were also not identified in plaintiff's charge of discrimination before the EEOC. As such, they cannot be the subject of a subsequent civil suit. *See Gordon v. MCG Health, Inc.*, 301 F. Supp. 2d 1333, 1339 ("In general, a defendant not named in the plaintiff's EEOC charge is not properly before the court unless the notification purposes of the EEOC filing requirement are otherwise

B.      ADA and ADEA Claims Against Citi Trends Corporate Office

Though plaintiff was technically employed by RHI at the time of the relevant events, Citi Trends was in control of her daily responsibilities and supervision and ultimately had the authority to conclude the assignment, creating a joint-employer relationship for purposes of these claims. *See Virgo v. Riviera Beach Assoc., Ltd.*, 30 F.3d 1350, 1359–60 (11th Cir. 1994) (recognizing a joint-employer relationship exists when "one employer while contracting in good faith with an otherwise independent company, has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer") (quoting *Nat'l Labor Relations Bd. v. Browning-Ferris Indus.*, 691 F.2d 1117, 1122 (3d Cir. 1982)); *see also DiMucci Constr. Co. v. NLRB*, 24 F.3d 949, 952 (7th Cir 1994) ("Factors to consider in determining joint employer status are (1) supervision of employees' day-to-day activities; (2) authority to hire or fire employees; (3) promulgation of work rules and conditions of employment; (4) issuance of work assignments; and (5) issuance of operating instructions."). Courts

---

satisfied; however, courts liberally construe this naming requirement." (citing *Virgo v. Riviera Beach Assoc., Ltd.*, 30 F.3d 1350, 1358–59 (11th Cir. 1994))).

have recognized that, in a joint-employer situation—such as when a staffing agency places an employee with a client company—each individual employer only bears liability for discriminatory acts within its control. *See Llampallas v. Mini-Circuits, Lab, Inc.*, 163 F.3d 1236, 1244–45 (11th Cir. 1998) (plaintiff could not bring sex discrimination action against employer and non-profit condominium board where the board made no decisions that affected the terms of her employment); see also *Torres-Negrón v. Merck & Co.*, 488 F.3d 34, 41 n. 6 (1st Cir. 2007) ("a finding that two companies are an employee's 'joint employers' only affects each employer's liability to the employee for their own actions, not for each other's actions"); *Whitaker v. Milwaukee Cnty.*, 772 F.3d 802, 811–12 (7th Cir. 2014) (employer county is not liable under ADA for allegedly discriminatory decisions of state agency over which it had no control); *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 228–29 (5th Cir. 2015) ("A staffing agency is liable for the discriminatory conduct of its joint-employer client if it participates in the discrimination, or if it knows or should have known of the client's discrimination but fails to take corrective measures within its control."). This approach is also consistent with the guidance of the EEOC. EEOC, Enforcement

Guidance: Application of EEO Law to Contingent Workers Placed by Temporary Employment Agencies and Other Staffing Firms at 2260 (1997) ("The [staffing] firm is liable if it participates in the client's discrimination."). All the alleged discriminatory behavior involved employees of Citi Trends—Frazier and Davis—who held supervisory positions over plaintiff. As such, Citi Trends is the proper party to plaintiff's ADA and ADEA claims.

## II.    Americans with Disabilities Act Claims

### A.    Discrimination

To state a claim of discrimination under the ADA, a plaintiff must allege that, at the time of the adverse action, she was (1) disabled, (2) qualified for the position, and (3) subjected to unlawful discrimination because of her disability. *See Mazzeo v. Color Resolutions Intern., LLC*, 746 F.3d 1264, 1268 (11th Cir. 2014). For purposes of the ADA, a disability is "a physical or mental impairment that substantially limits one or more major life activities," such as ". . . reading, concentrating, thinking, communicating, interacting with others, and working." 42 U.S.C. § 12102(1)(A); 29 U.S.C. § 1630.2(i)(1). The Court adopts an expansive view in considering whether an impairment imposes a

substantial limitation and looks to whether the individual is hindered in their ability to perform a major life function in comparison to the general population. 29 U.S.C. § 1630.2(j)(1). Under this standard, even episodic impairment can pose a substantial limitation and qualify as a disability under the ADA. 42 U.S.C. § 12102(4)(D).

Plaintiff has sufficiently alleged a disability. She suffers from lupus and an unspecified condition that causes seizures and aneurysms. Lupus is an auto-immune disorder that can cause a wide variety of symptoms, including fatigue, skin rashes, swelling of joints, organ problems, seizures, and immunological abnormalities. During early April 2018, plaintiff suffered "multiple seizures and lupus flares" requiring hospitalization. Doc. 1-1 at 22. Being incapacitated and hospitalized, even if only sporadically or rarely, is a substantial limitation on plaintiff's ability to perform major life functions, such as working. Therefore, plaintiff has sufficiently pleaded that she is disabled for purposes of the ADA.

A "qualified individual" is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. §

12111(8); *see also D'Angelo v. ConAgra Foods, Inc.*, 422 F.3d 1220, 1229 (11th Cir. 2005) ("[A]n ADA plaintiff must show either that he can perform the essential functions of his job without accommodation, or, failing that, show that he can perform the essential functions of his job with a reasonable accommodation." (internal quotations omitted)). Plaintiff has not alleged that she was inhibited in her ability to perform the tasks assigned to her. To the contrary, the pleadings suggest that she was specifically sought after based on her past experiences with Citi Trends, was relied upon to assist in multiple departments, and was acknowledged for doing an "excellent job." Docs. 1-1 at 22–24 & 1-2 at 4. As such, plaintiff has sufficiently pleaded that she was a qualified individual for purposes of the ADA.

Under the ADA, one way an employer discriminates against a qualified individual with a disability is by "not making reasonable accommodations to the known physical or mental limitations." 42 U.S.C. § 12112(5)(A). It may also discriminate by "denying employment opportunities to" a qualified individual with a disability, "if such denial is based on the need of such covered entity to make reasonable accommodation to the physical or mental impairments." 42 U.S.C. §

12112(5)(B). Thus, "an employer's failure to reasonably accommodate a disabled individual itself constitutes discrimination under the ADA, so long as that individual is 'otherwise qualified,' and unless the employer can show undue hardship." *Holly v. Clairson Indus., LLC*, 492 F.3d 1247, 1262 (11th Cir. 2007); *see also Boyle v. City of Pell City*, 866 F.3d 1280, 1289 (11th Cir. 2017) ("An employer unlawfully discriminates against an otherwise qualified person with a disability when it fails to provide a reasonable accommodation for the disability, unless doing so would impose an undue hardship on the employer.").

The only accommodations requested by plaintiff were to be allowed a daily lunch break to timely take medications and to attend doctors' appointments. Doc. 1-1 at 2 and 22. As other employees were permitted similar requests, these accommodations would not have prevented plaintiff from performing her duties. *Id.* at 24. The requested accommodations were denied. *Id.* at 2–3 & 22–23. Furthermore, plaintiff claims that she was subjected to increased harassment by Frazier after the supervisor learned of her disability. *Id.* at 3 and 23. Ultimately, plaintiff was told that her assignment with Citi Trends was concluded, despite originally being advised that she would become a permanent

employee.  *Id.* at 24–25.  Plaintiff has sufficiently pleaded that she was subjected to discrimination based on her disability.  Therefore, this claim survives screening.

B.    Retaliation

Although several of the alleged incidents of retaliation fail to state a claim upon which relief can be granted, plaintiff's claim that she was retaliated against for requesting a reasonable accommodation survives screening.  To the extent that she believes that her treatment and the decision not to retain her in a permanent position were retaliatory, under both the ADA and the ADEA, plaintiff must allege that (1) she engaged in a protected activity, (2)  was subjected to an adverse action, and (3) there exists a causal link between the protected act and the adverse employment action.  *See Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1287 (11th Cir. 1997) (discussing elements of retaliation under the ADA); *Stone v. Geico Gen. Ins. Co.*, 279 F. App'x 821, 822 (2008) (discussing the elements of a retaliation claim under the ADEA).  To demonstrate causation between the protected activity and the adverse employment action, a plaintiff must allege that (1) "the decision-maker[s] [were] aware of the protected conduct"; and (2) "the

protected activity and the adverse action were not wholly unrelated."
*Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 590 (11th Cir. 2000)
(alteration in original) (quoting *Farley v. Nationwide Mut. Ins. Co.*, 197
F.3d 1322, 1336 (11th Cir. 1999)), *abrogated on other grounds as
recognized by Crawford v. Carroll*, 529 F.3d 961, 973–74 (11th Cir. 2008).

A review of plaintiff's pleadings reveals three potential protected
activities: the filing of an EEOC complaint, the voicing a complaint
against the alleged discriminatory behavior, and the requesting of an
accommodation. *See* 42 U.S.C. § 2000e-3(a) (employers are prohibited
from retaliating against an employee for opposing an "unlawful
employment practice" or making a charge to the EEOC, testifying, or
participating in any EEOC investigation/hearing/ proceeding); *Frazier-
White v. Gee*, 818 F.3d 1249 (11th Cir. 2016) ("The [protected activity]
element may be met by a request for reasonable accommodations").
Plaintiff's EEOC complaint could not prompt retaliation, as it was filed
after the conclusion of her employment.  Similarly, as plaintiff has not
alleged that her complaint of "unfair and discriminatory treatment" was
conveyed to Citi Trends or any of its employees there is no causal
connection with any subsequent harassment or the decision to conclude

her position. *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000) ("In order to show the two things were not entirely unrelated, the plaintiff must generally show that the decision maker was aware of the protected conduct at the time of the adverse employment action.").

Plaintiff's alleged treatment following her request for accommodations supports a retaliation claim. She asserts that subsequent to notifying Citi Trends of her medical conditions, she was subjected to harassment, denied accommodations, made to work long hours in multiple positions, and ultimately denied employment. These are the type of actions that qualify as adverse employment actions. *See Santandreu v. Miami Dade Cnty*, 513 F. App'x. 902, 906 (11th Cir. 2013) (For purposes of a retaliation claim, "[a]n adverse employment action is any act by the employer that dissuades a reasonable employee from engaging in the protected activity.") Furthermore, as the alleged discriminatory and harassing acts occurred only after the requesting of accommodations, plaintiff has alleged a sufficient causal connection. *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1337 (11th Cir. 1999) ("a plaintiff satisfies [the causal connection] element if he provides

sufficient evidence that the decision-maker became aware of the protected conduct, and that there was close temporal proximity between this awareness and the adverse employment action.")  As such, her ADA retaliation claim survives screening.

## III.  ADEA Claims

The ADEA makes it unlawful for an employer to take an adverse action against and employee "because of such individual's age."  29 U.S.C. § 623(a).  "In order to make out a *prima facie* case for an ADEA violation, the plaintiff may show that she (1) was a member of the protected age group, (2) was subject to adverse employment action, (3) was qualified to do the job, and (4) was replaced by a younger individual, or that [his] employer treated employees who were not members of her protected class more favorably under similar circumstances."  *Id*. (citations omitted). The protected age group established by the ADEA is individuals of more than 40 years of age.  29 U.S.C. § 631(a).

As plaintiff is older than 40 years of age, she falls into the ADEA's protected age group.[10]  Also, as discussed above, she has pleaded that she was qualified for the positions she filled.  She has not, however,

_____

[10] The Court understands plaintiff to be 55 years old.  Doc. 1 at 4.

sufficiently pleaded the remaining elements of her ADEA claim. Specifically, she has not alleged that she was discriminated against because of her age. *Gross v. FBL Fin. Serv., Inc.*, 557 U.S. 167, 176 (2009) ("To establish a disparate-treatment claim under the plain language of the ADEA, therefore, a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision."). Rather, she specifically points to her disability as the reason for defendants' discriminatory treatment. Also, she has not alleged that she was passed over in favor of a younger person. Though she does claim that other employees were allowed the accommodations that she was denied, doc. 1-1- at 24, and that another individual was hired for one of the positions she filled, doc. 1 at 1, she at no point alleges that they were younger than she.

"[W]hen a more carefully drafted complaint might state a claim, a district court should give a *pro se* plaintiff at least one chance to amend the complaint before the court dismisses the action." *Jenkins v. Walker*, 620 F. App'x 709, 711 (11th Cir. 2015) (citing *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991), overruled in part by *Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 & n. 1 (11th Cir. 2002) (*en banc*)); see also Fed. R. Civ. P. 15(a)(2) (courts should grant leave to amend

"freely . . . when justice so requires"); *Seckinger v. Bank of Am., N.A.*, No. CV415-306, 2016 WL 1381814 at *2 (S.D. Ga. Apr. 6, 2016). Such is the case here, where plaintiff's ADEA claims might be salvaged by clarifying in what ways here age contributed to the disparate and discriminatory treatment she experienced. As such, the Court will allow plaintiff a single opportunity to amend her Complaint on the narrow issue of her ADEA claims. She is **DIRECTED** to amend her Complaint within 14 days of this Order. Failure to file an amendment will be deemed as a voluntary dismissal of this claim.

## CONCLUSION

In summary, the Court **RECOMMENDS** the dismissal of plaintiff's claims against the individual defendants Rosalyn Frazier, Lisa Avilla, Mark Brown, and Michael Bausman as they are improper parties under the ADA and ADEA. The Court further **DIRECTS** plaintiff to file an amended Complaint within 14 days from the date of this Order on the limited issue of her ADEA claims. Failure to file an amendment will be construed by the Court as a voluntary dismissal of this claim. Finally, plaintiff's ADA claims are approved for service, and the Clerk is

**DIRECTED** to forward a copy of this Order, along with the Complaint, to the Marshal for service.

This report and recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendation pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO ORDERED AND REPORTED AND RECOMMENDED**, this

10th day of February, 2020.

CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA